I wonder if the attorneys who are going to argue would step up and identify yourselves for the record so we know who you are. Good morning, Your Honor. Elon Churowsky for the Plaintiffs Appellants. Okay, I've got you on the brief here, Mr. Churowsky. Thank you. Good morning. I'm John Hamill on behalf of the Commonwealth Edison. Gentlemen, 15 minutes each. Anybody else going to argue? I don't think so, right? It's okay. Mr. Churowsky, you have our undivided attention. May it please the Court. Thank you, Your Honor. Your Honors, before the Court is the issue of whether plaintiffs can simply state a claim under the Third Amendment complaint and whether the Court erred in denying leave to amend such to file the Fourth Amendment complaint. The proposed Fourth Amendment complaint, Your Honor, is simply a single count. Could I interrupt you for one moment? I just wanted to have a question for all of the lawyers. This proposed class, is it all Commonwealth customers or is it the Commonwealth customers that were subject to the outage? What is it? Your Honor, the – I only say that because I live in Glenview. I lived there in 2007. I just want that on the record. I mean, I just – I don't feel that it's any reason to recuse myself from this case, but I want to disclose that to the lawyers. And it seems like your class could be every Commonwealth customer, but maybe it's not. Your Honor, if I may, we made clear in the lower court that the issue of the class definition first was subject to change and second was not before the Court on the motion to dismiss. And my fear, Your Honor, is that the issues relating to the proposed class will have an improper impact, if you will, on whether these particular plaintiffs can state a claim under the pleaded causes of action. So I beg the Court to consider the fact that the class definition is not at issue. Well, I'm just disclosing this little piece of information. If anybody has a problem with that, they can say so. Thank you, Your Honor. Indeed, if I may address the point indirectly further, an issue before the trial court was whether a plaintiff could state a claim for a breach of a duty for failure to meet a legal standard because the plaintiffs allege a systemic failure to provide a certain level of service, according to ComEd. And the plaintiffs contend, Your Honors, that whether the failure to provide the service that is required as a matter of law, as a matter of legal standard, is systemic or individual is not really at issue. If ComEd failed in its duty of care, if ComEd failed to provide power in accordance with Section 5-16-125, it doesn't matter if the – what matters is whether ComEd met its standard of care. That standard of care applies universally, whether it affects one customer or whatever proposed class is proposed at class certification. Doesn't that potentially make every power outage potentially a triable issue of fact? Every outage, every one? No, Your Honor. How are we going to distinguish between outages that aren't triable, okay, factually triable, and those that are? Well, Your Honor, there are two answers to that question. Give me just one, okay? Two answers to that question aren't going to help us much because we have to write an order or an opinion disposing of this case. For purposes of 5-16-125, Your Honor, under that statute, only outages that affect 30 – an outage, excuse me, that affects 30,000 customers is actionable. Or more. Or more. Okay. So any outage with more than 30,000 people involved becomes basically, under your theory, triable. Yes, Your Honor. Under 5-16-125, otherwise, with respect to the other causes of action, the outage is only triable if the outage is a result of failure to meet a legal standard, which the plaintiffs allege in their Third Amendment complaint. For instance, Your Honor, the failure to restore power in accordance with the already established legal standard is pleaded and well pleaded, if you will, by the plaintiffs. Now, whether or not ComEd met that standard is something that the court can easily decide. Indeed, in many other cases that the plaintiffs have cited. Have you pretty much abandoned all of your declaratory judgment relief? No, Your Honor. We haven't abandoned any of our claims. Okay. We simply wish to highlight for the court the easier issue, which in our view is – The easier issue? Your Honor, if I may. Yeah. The requests for injunctive relief, according to ComEd, improperly tread on the ICC's jurisdiction. However, the ICC itself has made clear, as we've shown in the pleadings, that it is not empowered to grant injunctive relief or damages. Well, how do you get around the Village of Deerfield case that was decided in December? Your Honor, first – Are you familiar with that case? Yes, Your Honor. First, in the Village of Deerfield case, they sought a breadth of injunctive relief. They sought a receiver. They asked the court to instill, if you will, to require ComEd to meet a reasonable and necessary standard of care that was not yet being met. Here, we are asking the court to hold ComEd's feet to the fire, if you will, for a pre-established standard of care. That's already codified in the statutes and in the common law. There are a wealth of cases that require ComEd, under the common law, to meet a duty of care, whether it's a duty to reasonably inspect and maintain power lines, or whether it is a duty to timely restore power, as in the Lorgio case, Your Honor, where the court held it was a question of fact. Let's talk about Illinois switching for a little while, okay? You cite it. They cite it. And it's an interesting case, both because of what it says and what it doesn't say, and because of the dissents that are contained in it. Are you basically telling us that Illinois switching was improperly decided, and if we take another look at it, we'll go along with Harrison's dissent and Scariano's dissent in the appellate decision? No, Your Honor. What we're stating is that it's already established. It's an already established standard of care. What's your best case for your theory right now? Well, Your Honor, 5-16-125. Case. Case. Your Honor, I would offer, if you will, that the Village of Deerfield decision that was just decided is the best case in the plaintiff's favor. Okay. In that case, the court established that the question of jurisdiction was properly, the plaintiffs were properly before the court, and it affirmed that, in fact, the question of. . . of the duty you have as a plaintiff to plead common law negligence in the way it's traditionally pled, which includes foreseeability, right? Yes, Your Honor. Okay. And plaintiffs have pleaded that a storm of this magnitude was foreseeable. It's in the third amended complaint. Okay. Let's look at it from a practical matter, assuming that you can state a cause of action based on a natural disaster like a storm. Okay. How does Commonwealth medicine go about insuring itself against this sort of incident? Who's going to sell them insurance if we buy into your theory that they are under a duty to foresee the consequences of the damages that are caused by a storm? First, Your Honor, that is a. . . And that the proximate cause of those damages can be intertwined, not only with the storm, but with their inability to maintain their infrastructure. So now they have to go out and buy insurance. Who's going to sell it to them? First, Your Honor, plaintiffs do not allege damages as a result of the storm, per se, but rather. . . Of the defective infrastructure that exacerbated the damages that your clients. . . Plaintiffs' claims can stand on their own. There are plenty of them in the third amended complaint, Your Honor. I am fourth proposed, under which plaintiffs can state a claim without having the court even touch the issue of what the proper infrastructure is. The. . . We already pointed out in the pleadings under 5-16-125 and other authorities that ComEd was already under a duty to provide a plan. . . And already, indeed, had instituted a plan for timely restoration of power. Your Honor, we've alleged that that plan was already in effect and it just didn't work. Therefore, there's no need for the trial court to establish what the proper standard even is because apparently ComEd already knew it. It was already in place and it just didn't work. And so, Your Honor, there is no need for the court to necessarily. . . In fact, Your Honor, if I may, the trial court in the transcript, in the hearing on the motion to dismiss the third amended complaint, clearly indicated that it thought that it was possible that it would have to opine on the proper standard of care. This is a motion to dismiss. There are pleadings under which it would not have to opine on the proper standard of care because plaintiffs allege that ComEd had a plan to restore power, for example. That this plan was codified under the statute and that it just didn't work and it was negligent in trying to carry out the plan. Okay. And you think that Deerfield gives you some support for the possibility that you complete a cause of action that will get by the law in Illinois with respect to what damages are recoverable when you have a utility outage? Yes, Your Honor. Doesn't, don't we have to revisit Illinois switching in order to do that? It says basically the only thing you're entitled to as a basis of an outage is the loss of what you would have paid for that service had it been provided. So that if you're without electricity for 12 hours, you get a rebate of 12 hours on your bill. Well, Your Honor, it's not a strict liability outage. That's not the only claim that's pleaded in the complaint. The complaint is a failure to carry out its standard of care, for instance, in carrying out its restoration plan. We're not asking only, we're asking for a strict liability. So basically what you're arguing, I think, if I understand your position, is that the restoration plan really is a recognition on the part of ComEd that they have a duty and that they've assumed it by providing for a restoration plan. They've assumed a duty. And it's required by the statute as well. That is correct, Your Honor. And, in fact, under 5-16-125, unlike in bail switching, it's very clear. If 30,000 customers are affected by an outage, well, then there's liability under the statute. And 5-5-201 is a sweeping provision which allows plaintiffs to seek relief. And that's true even if it's a storm? It's not the storm that we're seeking damages arising out of. I know. You're seeking damages for the consequences of the storm. No, Your Honor. We're seeking damages. Well, you know, I mean, you still have to plead negligence in the way that common law negligence would be recognized by a court. Okay? And then you have to rewind the film to foreseeability because that's always an initial determination that the court has to make. When you trot out your complaint involving 30,000 people, and God knows how many amendments to the complaint are going to take place as you add people to it whose food was spoiled in their freezers, et cetera, et cetera, et cetera, at some point you're going to have to address the court's concern for the issue of foreseeability for mass outages. Your Honor, whether this storm was foreseeable is a question of fact. Plaintiffs have alleged It's never a question of law as to the foreseeability of damages as a result of a storm like this. Well, in this case, I believe we already put on the record that these storms, these storms even have these magnitude So really what you're saying is the consequences of each and every power outage becomes under your theory a triable question of fact once you establish that A, there was an outage, and B, people were damaged as a result of the outage. It becomes a triable issue of fact as to what the consequences are for common law. Do you want to cut off time of 24 hours? Only under 5-16-125 are those circumstances in play, Your Honor, and the statute is very clear in establishing liability in those circumstances. So basically what you're saying is that if the storm occurs and the tree falls on the power lines, let's take lightning, it's easier. Lightning is nice. There's a big storm and lightning strikes the central grid for Commonwealth Edison in northwestern Illinois and knocks out 200,000 customers for 10 days. You're saying to us that under traditional common law principles of negligence, it was foreseeable that Commonwealth Edison should realize that a very substantial portion of their infrastructure could be knocked out by lightning and they should be responsible for the damages that occur as a result of it. Am I right? Yeah. ComEd has well over a million customers. Stores of this magnitude occur, have recurred. An entire portion, if not the whole village, of Wilmette was without power for days. And they should be responsible for all of the damages that consequently occur is what you're saying. They should have foreseen that this is a possibility or a probability. And under traditional standards of foreseeability, we should at least make that determination as judges that we move from it being first a question of law, of course foreseeability then involves public policy, doesn't it, which also involves the ICC. And we should get to the point where this always will be, under your theory, a question of fact. Can you ever envision of a situation where it would be a question of law initially and foreseeability would be decided as a question of law? Any scenario involving ComEd? Can you think of any? There are already pleaded facts indicating that the storm was foreseeable with all due respect. I understand that. Can you conceive of one that wouldn't be? That's what I'm asking you. Because I initially asked you whether what you're really telling us is that every power outage ultimately results in a triable issue of fact. That's what you're asking me to do, I think, or asking us to do. You want us to write an opinion that would say that foreseeability in these kinds of situations, outages caused by acts of nature, storms, trees falling on power lines, all of that, it's always going to be a question of fact as to the liability of ComEd for the consequent damages that occur. Right? No, Your Honor. I mean, we can write an opinion like that. Your Honor. I'm asking you if there's any limitation that we should impose on the foreseeability question. Your Honor, if there was a plan in place, like obviously there was under the pleadings. So if there's a plan in place to repair the damage caused by a natural storm or natural disaster, then there will always be a question of fact as to whether they effectively implement it. Right? The question of foreseeability is not, of course, the basis of the lower courts. I don't care what the lower courts said. This is a de novo review, isn't it? Yes, Your Honor. And I, you know, I mean, whether you like it or not, I think we have to address foreseeability as a central issue in this case. What kind of a burden are we going to put on a utility with respect to their liability for damages to their customers as a result of storms, whatever? Well, Your Honor, it could well be that when we move for class certification, if court allows us to proceed upon discovery, that we won't at all be seeking damages for all of these, for all of the customers with flooded basements as a result of the storm. That you mean it might be more limited in terms of the liability that they will be facing. But there's no question that the liability that they will be facing under your theory will be questions of fact for the trial. Well, Your Honor, questions of fact have to do with what's pleaded in the complaint. Right. And what's pleaded in the complaint is very clear in that, if you will indulge me, there were several days where calls were not answered by ComEd. There was a huge portion of the village of Wilmette that ComEd was not aware was even without power. Are you asking us, like in the Deerfield case, that you would like us to reverse the lower court and remand this case to the commission? You want to go to the commission? No, no, Judge. What we're asking for is for the court to hold that the lower court erred in holding that it didn't have jurisdiction to hear the claim. Well, how about the commission? I mean, isn't that what they did in the Deerfield case? I thought the court determined that you didn't state a cause of action, that there were not facts, the duty had not been established. I thought the court did not reach whether this is strictly a damages issue that should be before the utility. Right, Your Honor. The court didn't want to go ahead with the claims because it felt like this was a matter for the ICC. Right, but I thought the court dismissed this for failure to state a claim. It did, which is why. So it never got to whether the court lacked jurisdiction. You didn't even plead a cause of action. That's what the court ruled. Correct, Your Honor. But we could determine that the court didn't have jurisdiction in any event. But the court never decided that. That could be a separate basis upon which we could conclude that the trial court had no jurisdiction, that this belongs solely with the Illinois Commerce Commission, with the Illinois utility. What's the name of it? Commonwealth Lettison? No, never mind. The Illinois Commerce Commission. No, what you're trying to do is state a common law cause of action for negligence. In addition to the other causes of action. The statutory ones. Yes, Your Honor, Section 516.125. And 102. And 201. 201. 5 slash 5, 201. 201. Okay. Right. Basically, though, those two, those are still, even though they're statutory, they're rooted in concepts of common law negligence. Well, Your Honor, actually, Section 5 slash 16.125 is a statutory legislative given provision. And plaintiffs contend that they have a right of action under the statute, which is clear. In fact, there's no way plaintiffs could. The court also concluded that you didn't have the right of action under the statute. But we don't really care what the trial judge did anyway or his reasons for it, really. It's a 2615 motion to dismiss for failure to state a cause of action. Sure. That's what we're confronting. Yes, Your Honor. Whether he was right or wrong, we don't care why he was right or wrong. We decide whether he was right, and we may decide that he was right for reasons that he didn't express. Or that he was wrong for reasons he didn't express. I'm still pushing you back to this question of Illinois switching and foreseeability. Your Honor, the foreseeability comment is actually acknowledged. We've argued this below, and comment didn't dispute it. And it's in the record that 5 slash 16.125 liability is, in effect, strict liability. It doesn't even involve a question of foreseeability. It's a standard set forth by the legislature, Judge. I think I understand your position, Counsel. All right, but one thing I don't understand is that in the Deerfield case, they send it back to the court and told them that they have to go to the commission. They felt that the expertise of the commission would be of great assistance in resolving the matter. I'm reading from the court opinion. Yes, Judge. How do you get around that? Well, we don't, Judge. We believe that it would be appropriate. Well, if you don't get around that, then you're asking this. You see, that's the whole problem here. That you're asking this court to reverse the circuit court and to have this matter remanded to the commission. In Deerfield, Your Honor. No, I mean, are you doing that? No, Judge. You're asking to go back and stay in the circuit court, aren't you? Of course. However. The commission isn't going to help. However, we're not asking to reach a different result than in Deerfield. In Deerfield, the court held, in fact, that matters that are appropriate for the ICC to determine and the trial court's discretion should be stayed for the ICC, Illinois Commerce Commission, to determine. But expressly made clear that other matters may proceed. And we're talking about this type of matter they talk about goes to the commission. Well, Your Honor, what the commission needs to opine on and doesn't depends on the various claims that are at issue. And certainly the trial court. You're talking about the claims that you're making would come under the purview of the, unless I'm reading this case wrong. I've read it ten times now. Thank you, Your Honor. Section 516.125, for instance, establishes a clear standard of care. I'm not sure what the commission would need to opine on. If the trial court determines that certain matters are proper for the commission to tread first light on, if you will, then so be it. Then that would be appropriate. We're interested in complying with Deerfield, Your Honor. But Deerfield, again, left to the trial court's discretion what matters the trial court could decide and what matters it felt like the ICC could opine on. And the Deerfield decision, importantly, noted that the trial court was a proper place to be before the court. The private right of action under 516.125, the only way that ComEd holds, argues, that there's no private right of action under the Act is by disregarding subsection I and 5 slash 5201. And we contend there's simply no way around it. It also disregards the word may in subsection H of 516.125. I'm sure it's ready, made clear in our brief, so I won't belabor the point, Your Honor. Thank you, Counsel. We'll give you a chance to respond after we've heard from ComEd. Thank you, Judge. What do you say Deerfield says? Well, I think Deerfield says precisely what you say it said, Justice Gordon. And I think that the Deerfield court got it mostly right, mostly in the sense that the fundamental questions about the adequacy of the services ComEd provides is something to be decided by the commission. I have some disagreements with kind of how the Deerfield court got there. I don't know that they're critical to today's discussion. What I'd like to do, and I'll cover some more on Deerfield, but I think it says basically what you've said, I'd like to start out by maybe pulling back a second and talking about what the circuit court did here. And we had this case before, went through two very conscientious circuit court chancery judges. And they both made every effort to give the plaintiffs the opportunity to state a claim that could survive Section 2615. And in response to Justice McBride, it was a 2615 dismissal. And what really I'd like to... And that was, the third complaint was dismissed by Judge Rita Novak. That's correct. Previously it had been Judge Bronstein. That's correct. And I believe it was denied on the fourth, it was denied by Judge Novak. That's exactly right. And on that point, on leave to deny the fourth amended complaint, Justice Cahill, this is where I have a disagreement with your statement about the standard of review. You're absolutely correct that when we're talking about the 615 portions of the chancery court's decision, it's a de novo review. On the denial of leave to amend the fourth amended complaint, that's an abuse of discretion. I think your words this morning, steep hill to climb in the other case. And so that's the standard that governs that part of the case. But let's talk about the complaint. Because even this morning, in the last 20 minutes or so, we've heard some of the same struggles that I think plagued the case below. Today, sitting here now, we've heard yet a new version of what the case is about. What I heard from counsel's argument was that this case is about ComEd filing a plan and not following through with a plan. That's not what's in the complaint. Then I heard, and in response to a number of your questions, Justice Cahill, I heard that the case is about foreseeability. Well, I looked at the complaint while we were sitting here, and the complaint mentions foreseeability once. And this is what it says. First paragraph in factual background. It says, on or about August 23, 2007, a storm dash, which was incidentally reasonably predictable and foreseeable dash, affected parts of Illinois, including Cook County and so forth. That's the allegation. That's not a foreseeability analysis of your right to state a cause of action for negligence. That's correct. It's not a foreseeability analysis. There's no allegations about the storm. A storm is coming. A storm is coming. So it was foreseeable, okay, that a storm was coming. And that gets them over the hump? It does not get them over the hump. Of course not. Because you're claiming there's no duty. Not exactly. ComEd has many duties. They are duties that are enforced by the Illinois Commerce Commission. Now, when we're talking about a duty under these set of facts. Under these set of facts. Under the common law. Under the common law, I think the duty has to be informed by what the regulations say and what the Commerce Commission says. Whether that gives rise to an independent count for negligence or, as I think the switching station case really gets to, whether the negligence standards and the regulatory standards and the statutory standards are all kind of circling about the same concept. Again, I'm not sure. They struggled with this in Illinois switching. And pretty much, as far as I know, Deerfield aside, Illinois switching is the last word of our Supreme Court on this kind of case. Okay? And this case is somewhat different from Illinois switching too because, at least in Illinois switching, they could have pled that they were negligent in the way they prepared the switching station to protect it from fire. Okay? That's one of the troublesome things there. Now, I suspect what they're really arguing here is they're trying to take the dissent in Illinois switching and the dissent in the appellate court opinion in Illinois switching, both of which thoroughly covered all of these issues, it seems to me. And they're saying, well, we can somehow shoehorn in a massive storm and the consequences of that storm into the kind of negligence the Commonwealth Edison was accused of being negligent with in Illinois, not Commonwealth, Bell Telephone, in not properly preparing their station. Okay? But you still have to go back to the traditional concepts, it seems to me, of common law negligence and foreseeability being initially a question of law and whether you can hold a utility responsible for the myriad damages that occur as the result of a big storm. The problem I have with the way they're trying to plead their case is the same problem I think the trial judge had. There's a difference between failure to put a yellow sleeve on a cable, okay, in the backyard. I have a cable in my backyard. That cable is a responsibility of Commonwealth Edison. A while back there was a case where somebody tripped over the darn cable because you couldn't see it in the garden. It's exactly what happens in my wife's garden during the summer. That cable kind of disappears. Okay. There was a case. I don't know where the case went. All I do know is that Commonwealth Edison has gone around putting yellow sleeves on all of those cables. That's different. That is maintaining their superstructure. That's different than the damages that are caused by an act of God, a storm. They want to take the cable case and transfer it to a class action for 30,000 people or 100,000 people because of storm damage. At some point there's a public policy issue and there is always a public policy issue and the initial determination as a question of law is the foreseeability. And I think that's where they're going to have a real hard time pleading because they want us to take all of the cases, the incidental cases, and they cite them all, where Commonwealth Edison has been negligent in maintaining its property or if its truck runs over a kid at an intersection. Take those cases and transfer it into these, for some reason, class actions for failure to maintain infrastructure on a massive scale. And my only question is, as a matter of public policy, where would Commonwealth Edison or Illinois Bell or any other utility buy insurance to cover themselves against these kinds of lawsuits? Answer, I don't think there is one other than a court making a statement, initially, as a matter of public policy, we're going to hold public utilities liable for these kinds of consequential damages. I use consequential not in the legal sense because I don't want to get into a Mormon argument. But that's where this case really comes down to and I think the last word from the Supreme Court on that was Illinois switching. I agree, Justice Gale. I'm sorry for the speech. But I don't think we can write an opinion that gives them relief without some signal from the Supreme Court that we're opening things up. I certainly agree with that. I also think that you probably don't need to go anywhere near that because let's talk a little bit about abuse of discretion. There were multiple efforts to amend this complaint. And this is where I think that both Judge Bronstein and Judge Novak did a terrific job because they kept coming back to the plaintiffs and saying, what's your real claim? What happened to you? Is it a sleeve type case, a sleeve in the garden? Is it something like that? Was there some hole outside your yard? What is it that happened to you? And we never got an answer. We never got anything clear. When you go through the complaint, this is the third amended complaint that's on file, you go through that complaint and you find nothing like that there. You hear generalized allegations. Justice Gordon, you asked about the Deerfield case, and counsel said the Deerfield case was far broader than this one. Well, that's not true. When you look at the request for relief in the complaint, it's extraordinarily broad. Paragraph E of the prayer for relief asks essentially for the court to be the regulator. Oh, to take over comment and medicine. Well, there's precedent for that. I mean, Kansas City, a federal judge took over the school system because of all of its deficiencies and ran it for, what, 18 years? And what's different from that kind of a circumstance is here we have a regulator. We have a regulator that's been entrusted by the legislature. And let's be clear, no one is saying that an individual plaintiff doesn't have a remedy at the Illinois Commerce Commission. I've been saying since day one that if these individual plaintiffs, these three or four people, one is suing on behalf of herself and her son, if they have a claim, they have Section 10109 of the Public Utilities Act, and they can go to the commission and bring their claim there. So no one has said that. Now, we've heard a lot this morning about Section 16125. Let's just spend a minute on that. Of course, that's the cause of action, in quotes I put it, that the court below denied them leave to proceed. But even if we look at the substance of the complaint, you can't take away the first part of Section 16125, the part that talks about a 30,000-person outage and so forth, with the remainder of the section, which says, remedies under this section, couldn't be clearer, may be sought exclusively through the commission. And it tells you how to do it. Now, we have a quibble going on in the briefs about what the word may mean. It's just one of these cases where there's may mean shall or shall mean may. That's not an issue here. The issue here is what does the word exclusively mean, and the statute says exclusively through the conversation. So I think that part is pretty clear. Now, I have a number of other things I can go through here, but we've had a lot of questions. Are there issues, are there things that are troubling you that I could be of assistance to in trying to get at the policies underlying this, the statutory scheme? Because what it comes down to, I think that the key to this case, and what we're asking you to do, is to look at the case for what it is, which is a situation where the plaintiffs had multiple opportunities to state a claim and couldn't do so. The case really ought not be viewed as some sort of a referendum on power outage and power outage restoration plans. That's not what it should be about. And, in fact, Justice Cahill, something you said, when Plaintiff's Counsel's argument struck in my mind, you said is this going to lead to kind of a floodgate. Every time there's a power outage, someone's going to come running to court. Actually, that's happened already in this case. The case began in August of 2007. In August of 2008, one of the plaintiffs' power went out again, and we had right away a TRO motion, another TRO motion. And we had a motion for reconsideration of the denial of that TRO motion. So we can see what's going to happen if we allow these kinds of cases to go forward. Well, part of the problem, again, though, is that I think what the plaintiff is trying to allege here is that once Commonwealth Edison undertakes a duty that they may not have originally had, like these preparations for emergency situations involving people who have to have power even when there's an outage, making a list of people who are on ventilators, whatever, that once they undertake that duty, okay, they're subject to doing it negligently. And I think what they're trying to plead is that all the power outage does is highlight their negligence in a duty they've undertaken. The power outage puts a spotlight on their negligent undertaking. And where I'd like to turn that spotlight then. But I think that's what they're trying to plead. I don't know how specific they need to be about that, but I think they probably have to be a little more specific than alleging that 30,000 people may have been damaged by their failure to properly prepare this infrastructure, which they created in order to deal with the possibility of a wide-scale outage. They also have to deal with the Illinois Commerce Commission and the switching case that says all you get, whatever you claim your damage is to be, the only thing you're going to be able to get is recovery of what you paid for the service you lost. And what the switching case also says is that there is no duty to provide uninterrupted service. Of course not. What I'd like to do is take your spotlight, though, one last time and put it on the complaint. And what's missing from this complaint, what's missing from what we heard this morning, what's missing from what we heard two years over the course of really it's five complaints, if we count amended complaints, is this. What really is the standard? We heard counsel say the legal standard has been pleaded thoroughly. Well, what is it? Is it the duty not to have power ever go off? Because that's what they started out with, continuous power, and then they conceded that wasn't a duty. Is it the duty to timely restore power in 24 hours? Because that's what the third amended complaint really gets at, and that's what counsel conceded below with their theory. There's no such duty. It's not there. Those duties for restoring power are covered by ICC regulations. I don't know what it is. I'd like to take the spotlight and put it on the wall. Well, I think what he's saying, and I don't want to speak for him, but what he's going to say is that the duty is once you undertake remedial infrastructure in anticipation of possible outages, you're responsible for doing it negligently. Well, that's not in the complaint, but even if it were, that particular allegation is squarely. I think it runs right up against the statutory prohibitions, which anticipate this kind of an argument, but I know you've got to give them their chance to plead. They're good lawyers. I think we've covered just about every point that I've got to make. If there's anything else I can do to help the Court, I'd be happy to answer all questions. No. Mr. Churowsky, you get the final word. Your Honors, we don't know, standing here today, sitting here today, what type of insurance ComEd has, what's covered. I just brought that up. That's a red herring at this point. I threw it out just to see how you'd handle it. That's all. Very well. However, in Illinois switching, the Court ultimately held that it was a public policy issue because the relief requested would affect rates. That's a very forceful dissent that kind of lies into your argument. Would affect rates. Yes, Your Honor, and the Court just made clear in the village of Deerfield that this type of case would not affect rates. If this were a case where only four plaintiffs were before the Court, and there's no class allegations, would plaintiffs be able to sustain a claim? I would submit that it doesn't matter whether there's a class pleaded or not. The question is, does this affect rates? I think it's pretty clear under the last case, village of Deerfield, and all of the argument below, that it does not. And I don't believe that Illinois switching would prevent plaintiffs from stating a claim here. In addition, I believe that, yes, it is true, we do plead negligence. We also plead other causes of action and theories of liability, including the equivalent of a strict liability under Section 125, which comment itself is argued in the ICC, we've noted in the record below, Your Honor. What matters here is whether plaintiffs can state a claim. It appeared to us, with all due respect to the lower court, that it based its decision not about whether the elements met a particular duty, but the Court actually acknowledged in the transcript we attached to our opening brief that this case, its decision was not about that. It was about whether it thought it could, quote, unquote, play regulator. And what I wish to bring to the Court's attention is that we allege claims under which the Court doesn't have to play regulator. The standard is already set forth in the statute. The standard in Section 125, the standard is already set forth in the common law as well. If the trial court believes that certain claims it needs the ICC's guidance on, then it can do so. And, in fact, that's what the guidance of this Court's decision in Deerfield is. This case is about, right now before the Court, is whether plaintiffs can simply state a claim. There are no public policy considerations, with all due respect to the Court, that would prohibit plaintiffs from stating a claim, not due to an outage, but due to ComEd's misconduct, failure to meet an already established standard of care, and under facts in which it's clear that it didn't, if those facts are taken as true. Not only is it clear that it didn't meet a standard of care, but it's clear that under the facts taken as true, that it did believe it had a duty to timely restore power. Your Honors, with all due respect, this case is about people whose basements were flooded, and irrespective of whether the outage affects 30,000 people or 600,000 people, that question shouldn't be before the Court right now. Because before the Court, we have four plaintiffs who suffered significant damages. The Illinois legislature is clear, it's given us a statute, Your Honor, which enables customers to bring a private cause of action for violations of the statute. It's not limitless. Illinois switching, of course, is correct. However, under the circumstances pleaded here, plaintiffs have stated a claim under the elements. The Court didn't address the element in its last order. In fact, Your Honors, this argument about having the Court play regular was only recently introduced by ComEd. It was not a common or main thread in its prior arguments. Only after plaintiffs had amended their complaint, in the third amended complaint, in its motion to dismiss, did ComEd really pound through, if you will, its main argument, that being that this is not the proper place for plaintiffs to be. In Deerfield, the Court said that it is. In Olympia cases we've decided the Court said that it is. Whether or not ultimately this case affects rates is already decided under the law. As a matter of public policy, yes, we don't have a limitless cause of action under 5-5201, but we have a cause of action for breaching pre-established standards of care, which is well-plated in the complaint, which is already stated in the statute itself, such as 5-16-125. In terms of the life support registry, and by the way, Your Honors, we're asking for the Court to determine what the act means here, what a particular statute means. In the life support registry claim, Your Honor, we have a plaintiff and her son who can't breathe without a ventilator 24-7. We've alleged that meanwhile, we've alleged that VIPs, very important persons, ComEd rushed to restore power to them while leaving Jason Sloan in the lurch. There is a statute that the Court can opine on and determine what does it mean. What does it mean when the statute says that ComEd has a duty to treat its customers fairly and has a duty to protect the health and safety of its customers? I believe, Your Honor, that the Court would be well-suited to opine on the meaning of a statute. What? Interpreting a statute, just like interpreting 5-16-125, interpreting the legislative intent as the parties have disputed here. What does that mean? I think this is a question for the Court to decide. And so before the Court, what I'm trying to impress upon Your Honor is it seems like I agree with you, well, you don't agree with me, but I agree with you that initially under, you know, standard common law negligence principles, we cannot avoid addressing foreseeability. Your Honor, foreseeability is already, it's already clear that because You've got to get over that hump, counsel, no matter what you do. And that foreseeability issue involved in your case involves a question of public policy. And 5-16-125 requires ComEd to provide a plan on reliability and on making sure that it timely restores power. It's in the statute itself. Clearly, it's already done so if it's met the statute. Clearly, it had such a plan. And this is already pleaded. We don't have to use the word plan. This is not in the complaint. There was a response system in place. There was an automatic telephone system in place. There was a power grid. ComEd has a duty to be aware when someone is out of power. That's why they ask customers to call. Now, this is foreseeable. It's clear because it's already codified in the statute, Your Honor. It's foreseeable that ComEd needs to have a plan, if you will, to restore power. ComEd never disputed below that these storms are foreseeable. Whether it's a higher magnitude or a lower magnitude, I don't think it would be appropriate for a court to opine as a matter of public policy on the degree of the storm at bar. And if the court were to rule against the plans or send none of their claims back to the trial court, the effect, Your Honors, would be to vitiate 5-501 and not only the past case law, but the guidance that the legislator has expressly provided in providing this cause of action. Does the statute allow the commission to waive certain claims or unforeseeable or how do they describe it, the storms? Do you know what provision I'm talking about? Yes, Your Honor. You're talking about the waiver provision under 5-16125. Right. Yes, Your Honor. What does that mean? And that is also codified. What does that mean? What that means is if ComEd can show that the storm was due to an unpreventable interruption, if the storm was unpreventable or uncontrollable, then... Well, aren't these storms always unpreventable? They are out of our control. Are they not always? By holding, well, no, Your Honor. And that's why this is in the statute. By virtue of the court holding that this storm... Unpreventable damage due to weather events or conditions. So you're saying the damage is preventable. Yes. But how are the weather events ever? They're tied to each other, aren't they? Apparently they are because there's a procedure in place that's codified in the statute for ComEd to make a case for that. Well, if it was assumed that storms are damage... So wouldn't this whole thing then suggest again that if this belongs anywhere, it belongs in front of the commission? No, Your Honor, because we have a private... because the statute is clear that the express language... The statute leaves the door ajar for your common law action in circuit court. That's what you're arguing. No, Judge, not only a common law action. We're talking... A statutory action. Ultimately, though, your pleading will require you to meet common law standards of negligence. Agreed? Not only, Your Honor. I'm not sure, but while Your Honor is focusing on the common law, of course that's an important integral part of plaintiff's claims. However, plaintiffs also have claims in violation of the statute, which is not to be disregarded either. No, I'm not disregarding them. Clearly under the statute, your yellow sleeve on the table indicates that Commonwealth Edison understands their potential liability. That's why they put the yellow sleeve on the bar. And the legislature also understands that there are certain... It has nothing to do with a storm or an act of God that results in widespread damage. Your Honor... Again, the bolt of lightning that hits the main tower and throws, knocks out power all over the Middle West, something like that. If the court were to opine, as a matter of law... If the court were to allow you... Here's their problem, and this is why it's a policy question that the courts are going to keep pushing you back into the Commerce Commission to resolve, is that if we leave the door ajar for the kind of damages that you want to plead and prove for 30,000 people here and certify the class, okay, we're going to have to set up a special court to hear Commonwealth Edison cases. Now, you may say, as a matter of public policy, that's what the legislature wants. Your Honor... But I think the kind of relief that you really want requires you to go down to Springfield and get the statute amended. Well, Your Honor, the statute, in fact, if the court were to... Because if there is a loophole that you found, they're going to close it pretty fast. Your Honor, if I may, the statute, 5-16-125, contains a provision that actually deals with the concern that Your Honor has about foreseeable... I don't have a concern. I'm just trying to follow the Supreme Court's directives on how we should handle cases like this. If I may just finish up. Sure. Thank you. The statute itself already provides a procedure in which ComEd or any utility can make a request for a waiver on grounds that the damage was unpreventable. Now, that's a procedure provided by the legislature. Now, it would be improper for the court to say, oh, that procedure doesn't matter because we're holding, as a matter of law, that you can't say to claim.  And so, too, is subsection H and I and 55201, which is also part of the regime of the IPUA, which requires that if a customer is aggrieved by a violation of a standard under the Act, that it can state a claim and it can bring a cause of action under the Act. The public policy matter to the extent that public policy would matter based on the breadth of the class allegations. Again, I beg your honors to remind yourselves, if I may, of the motion that's at bar, the order that's at bar, and that is it's a failure to state a claim for four plaintiffs whose basements are damaged. This is not a public policy issue which implicates rates as in the Illinois switching case. This case is not going to change the rates that ComEd provides. Regardless of the rate, it is a standard of care that ComEd failed to meet. And if plaintiffs are not able to state a claim under a legislative given section... You say there'd be no impact on rates if you were granted all of the relief that you requested in your complaint? Well, under the... Under your complaint, you really feel that the circuit court, for example, would have the power to enjoin, okay, enjoin ComEd with respect to certain structural deficiencies in their grid system. As the village of Deerfield says... And we can order them, we can order them to improve them, to bring their infrastructure up to a level that would prevent the kind of damage. That's what the village of Deerfield has asked for, Your Honor, plaintiffs do not... Right. And they've argued at length... And you don't think that would have any impact on the rates? We're not asking for that, Your Honor. Oh, I know you're not asking for that. But what do you think would happen if we directed Commonwealth Edison to give you the kind of relief which required that they spend millions and millions of dollars, unanticipated dollars, in their current rate structure to upgrade their infrastructure to meet the kinds of levels that you say they should meet? Under a reading of the complaint, most favorable to plaintiffs, ComEd's already spent the money. They don't need to spend a dime more. They've already spent the money, and the system that's in place did not work. Okay. And so, Your Honor, this is a motion to dismiss. Plaintiffs are just asking to state a claim. If it's the case that a clause can't proceed or that there are public policy reasons for that, then that could be addressed at a day later. Okay. Anything else? Well, one last thing, Your Honor, in terms of... Go ahead. Allegations. We have a case, this is... At bottom, we have a plaintiff here, Jason Sloan, who requires a respirator to breathe every second of the day. We have an allegation where ComEd rushed to help other people and disregarded plaintiff Sloan. We have clearly codified law, which admittedly is general in its terms, but which clearly applies in principle. And who is better to apply that law than the court? We believe that plaintiff's claims for the life registry also should be reconsidered and also should be reversed. Thank you. Thank you, counsel. The case was imaginatively pled and argued. It will be taken under advisement. Court is adjourned.